UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM CRENSHAW,

                          Plaintiff,

                                                                    DECISION AND ORDER

                                                                    09-CV-6167L

                           v.

SGT. G. KORBAR,
DSP J. THOMPSON,
SUPT. J. BERGERY,
JAMES HOOGE,

                          Defendants.
_____

       Plaintiff, William Crenshaw, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that the defendants, who at all relevant times were employed by DOCCS, have violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.

       Defendants Korbar, Berbary and Thompson have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing all of plaintiff's claims, and defendant Hooge (who was added as a defendant in September 2010, *see* Dkt. #72) has moved to dismiss plaintiff's claims against him pursuant to Rule 12(b)(6). For the reasons that follow, the motions are granted, and the complaint is dismissed.[1]

---

[1] As will be made clear below, disposition of Hooge's motion does not require reference to any materials outside the pleadings, and to the extent that the Court has considered any such materials, I have done so only with respect to the summary judgment motion brought by the other three defendants.

## BACKGROUND

The record shows that in September 2007, plaintiff and another inmate, Kareem Lundy, were transferred to Collins Correctional Facility, from Great Meadow and Wende Correctional Facilities, respectively. At that time, both plaintiff and Lundy were serving administrative sentences of confinement in the Special Housing Unit ("SHU"), based on misbehavior charges of which they had been found guilty, in separate and unrelated proceedings at their previous facilities. Upon arrival at Collins, plaintiff and Lundy were assigned to the Collins SHU, and were double bunked, *i.e.*, placed in the same cell.

On September 29, defendant Sgt. Korbar, as the supervisor on duty, was summoned to plaintiff's cell by another officer. When she arrived, Korbar saw through the cell door window that plaintiff was lying on the cell floor, tied up with a bedsheet. Lundy was standing nearby.

Korbar asked plaintiff, through the cell door, if he was all right, but he did not respond. Lundy, however, stated that he had choked plaintiff and tied him up. At Korbar's direction, staff then entered the cell and removed Lundy and plaintiff. Plaintiff remained uncooperative and uncommunicative, refusing initially to stand, and then refusing to answer questions about what had happened.

Plaintiff was taken to a local hospital, and then to the Erie County Medical Center for a mental examination. He was found to be unharmed, and there was no evidence of a sexual assault, nor was there any physical evidence that plaintiff had been choked.

During Korbar's investigation of the incident, Lundy admitted to her that he had tied plaintiff up so that he, Lundy, would be given a single cell. Plaintiff continued to refuse to answer questions about what had happened.

Korbar concluded that plaintiff and Lundy had staged this incident, in the hope that they would be separated and each given an individual cell. She then wrote a misbehavior report charging plaintiff with refusing a direct order, interference, and creating a disturbance.

After a Tier III hearing conducted by defendant Thompson, plaintiff was found guilty of the charges against him in October 2007, and sentenced to ninety days' SHU confinement, sixty days of which were suspended. The entire sentence was deferred until March 17, 2008, and on December 14, 2007, Thompson's determinations were reversed on administrative appeal, on the ground that the "circumstances depicted in [the] misbehavior report do not support [the] charges and [the] hearing officer failed to indicate how [the] mental health testimony was considered ... ." Bove Decl. (Dkt. #81) Ex. E. Because plaintiff was still serving his SHU sentence on other charges, which are not at issue in this action, he never served any SHU time as a result of Korbar's charges against him stemming from the September 29 incident.

Based on these facts, plaintiff has sued Korbar, Thompson, Collins Superintendent James Berbary, and Lt. Hooge, who apparently reviewed Korbar's misbehavior report before passing it on for further action. As stated, plaintiff asserts claims under the First, Eighth and Fourteenth Amendments, as described in more detail below.

## DISCUSSION

### I. First Amendment Claim

Plaintiff's First Amendment claim, which appears to be asserted only against Korbar, asserts that plaintiff "had a right to freedom of speech that included the right to remain silent," and that "Sgt. Korbar retaliated against plaintiff by writing a false misbehavior report." Complaint at 9 ¶ 6. Apparently, plaintiff alleges that Korbar retaliated against him because he refused to speak about what had happened between him and Lundy prior to Korbar's arrival at the cell.

In order to prevail on a claim of unconstitutional retaliation, plaintiff must allege, and ultimately prove, that (1) he engaged in constitutionally protected speech or conduct, (2) defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other*

*grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Crenshaw v. Herbert*, 445 F.Supp.2d 301, 303 (W.D.N.Y. 2006).

Courts approach prisoner retaliation claims "with skepticism and particular care," however, because "virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491. *See also Graham*, 89 F.3d at 79 (noting that "[r]etaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Assuming *arguendo* that plaintiff's refusal to speak could be deemed protected conduct, *see Powell v. Wilner*, No. 06-cv-00545, 2009 WL 840756, at *1 (D.Colo. Mar. 30, 2009) ("Plaintiff's alleged refusal to confess constituted protected conduct"), this claim nevertheless fails, primarily because plaintiff has not alleged facts or presented evidence of any causal connection between his protected activity and the alleged retaliatory act, *i.e.*, Korbar's issuance of a misbehavior report. Although the disposition of guilty was ultimately reversed, the record shows that Korbar had a reasonable basis for the charges, and plaintiff has presented no evidence to suggest that she had any particular motive to retaliate against him. The mere fact that the misbehavior report was issued contemporaneously with plaintiff's refusal to speak is hardly remarkable, as the report and plaintiff's silence both occurred in connection with the same underlying incident involving plaintiff and Lundy.

Furthermore, plaintiff never did suffer any actual harm as a result of the misbehavior report. As stated, the disposition was reversed before plaintiff began serving his SHU sentence on that report. Thus, the report could hardly have given rise to any concrete harm, nor could it have tended to have a chilling effect for First Amendment purposes. *See Bilal v. White*, 494 Fed.Appx. 143, 147 (2d Cir. 2012) (First Amendment claim failed where there was no showing of actual harm to inmate).

**II. Eighth Amendment Claim**

Plaintiff asserts that defendants violated his rights under the Eighth Amendment by failing to protect him against injury at the hands of his cellmate, Lundy. This claim fails as well.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). A failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988). In order to demonstrate such deliberate indifference, the plaintiff must show that "he [wa]s incarcerated under conditions posing a substantial risk of serious harm" and that prison officials had "knowledge that [the] inmate face[d] a substantial risk of serious harm and ... disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620.

The evidence here fails to demonstrate that defendants deliberately ignored any known risk to plaintiff's safety when they assigned him to share a cell with Lundy. Lundy had previously been found guilty of fighting and engaging in violent conduct, but nothing in his record indicated that he would pose any particular danger to plaintiff. The evidence shows that both inmates' backgrounds were checked before they were assigned to the same cell, and I see nothing in the record to indicate that defendants turned a blind eye to a known or obvious risk in doing so. Were *any* history of violent behavior to prevent individual inmates from being required to share a cell, prison officials' discretion would be severely hamstrung. That is not what the Constitution requires. *See Veney v. Wyche*, 293 F.3d 726, 733 (4th Cir. 2002) ("decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials").[2]

---

[2] I also note that, aside from plaintiff's allegation that Lundy choked him, there is no evidence that he suffered any physical injury. A medical report prepared later on the day of the incident states that "no injuries [were] seen" on plaintiff's body. Dkt. #1 at 15. Absent some
(continued...)

**III. Fourteenth Amendment Claims**

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated because Korbar issued a false misbehavior report, and because Thompson found him guilty of the charges in that report.

To make out a valid Fourteenth Amendment claim for a denial of due process, plaintiff must show that defendants deprived him of a protected liberty interest. Plaintiff can make no such showing, for the simple reason that he never served any time on the charges brought by Korbar. As stated, Thompson's disposition was reversed before plaintiff began serving that sentence. Thus, even assuming that he had a liberty interest in avoiding SHU confinement, he was not deprived of any such interest here. *See Young v. Hoffman*, 970 F.2d 1154, 1155 (2d Cir. 1992) (since inmate's "penalty [was] vacated and ... Young never served a day of the penalty," he "suffered no interference with a liberty interest and ha[d] no valid claim for relief") (per curiam); *Jackson v. Goord*, No. 06-CV-6172, 2011 WL 4829850, at *17 (W.D.N.Y. Oct. 12, 2011) ("the Court finds that Defendants are entitled to summary judgment on the due process claims involving the hearings conducted by Dougherty and Monin, since Plaintiff never served any disciplinary sentence as a result of either hearing").[3]

Plaintiff also makes the conclusory allegation that Korbar and Thompson conspired to deprive him of his constitutional rights. Complaint at 10 ¶ 8. Construing this as a claim under 42

---

[2](...continued)
physical injury, plaintiff may not recover damages for mental distress, or simply because, as he puts it, "[i]t's possible plaintiff could have been killed in a situation like this." Complaint at 13 ¶ 17. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury").

[3] I also note that even if plaintiff had served the sentence imposed by Thompson (90 days, 60 of which were suspended), it is doubtful that he could establish a due process claim, absent evidence that his conditions of confinement were unusually harsh. *See Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (in the absence of unusually harsh conditions, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection") (citation omitted).

U.S.C. § 1985, I find that it must be dismissed, as it falls woefully short of the kind of allegations necessary to make out a civil rights conspiracy claim. *See Zulu v. Botta*, 613 F.Supp.2d 391, 393 (W.D.N.Y. 2009) (citing *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005), *cert. denied*, 547 U.S. 1101 (2006)) (additional citations omitted).

**IV. Claims against Berbary and Hooge**

In addition to the grounds for dismissal outlined above, I find that the claims against Berbary and Hooge would have to be dismissed in any event, due to their lack of personal involvement in the alleged violations. Liability under § 1983 requires a showing of the individual defendant's personal involvement in the alleged constitutional violation. Personal involvement may be shown where the defendant directly participated in the violation, or, if the defendant was a supervisory employee or official, where the defendant: failed to remedy the violation after it was brought to his attention; created or fostered a policy or custom that allowed or caused such violations to occur; was grossly negligent in supervising subordinates who committed the violation; or showed deliberate indifference to the rights of others by failing to act on information that constitutional violations were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Henry v. Lempke*, 680 F.Supp.2d 461, 464 (W.D.N.Y. 2010).

No such allegations or evidence has been presented here. The claims against Berbary are premised on his role as superintendent, and Hooge appears to have done nothing more than pass along Korbar's misbehavior report for further action. That is not enough to establish their liability. *See Rivera v. Lempke*, 810 F.Supp.2d 572, 576 (W.D.N.Y. 2011) ("there is no *respondeat superior* liability in § 1983 cases").

## CONCLUSION

The motion for summary judgment by defendants Korbar, Berbary and Thompson, and to dismiss by defendant Hooge (Dkt. #81) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 17, 2013.